Argued January 7; reversed January 19, 1932

HILL ET UX. *v.* BENDER ET AL.

(6 P. (2d) 1081)

*Alfred P. Dobson,* of Portland (Robert T. Jacob, of Portland, on the brief), for appellant Foster.

*C. F. Gillette,* of Salem, for respondents.

BEAN, C. J.  In order to understand the transaction involved, it appears necessary to state how the matter arose.  Before the execution of the contract and chattel mortgage, which is in controversy, J. S. Talbot, deceased, sold his farm, described in the contract, to one Given.  At that time Given was the owner of the personal property described in the Talbot chattel mortgage.  He mortgaged the same to Talbot to secure the performance of the terms and conditions of the contract for the purchase of the farm.  Afterwards, Given sold and transferred his interest in the contract for the purchase of the farm, also the personal property mortgaged to Talbot, to plaintiffs Hill and wife.  At that time a new contract of sale of the farm was executed

by Talbot to Hill and the chattels were again mortgaged to Talbot by Hill in the sum of $2,000, to secure the performance of the contract to purchase the land. On May 20, 1928, Hill sold and transferred his interest in the contract for the purchase of the farm and the personal property to the defendant A. G. Bender. At that time a new contract of sale was executed by Talbot and the Benders and Bender gave Talbot a mortgage on said chattels in the sum of $2,000 to secure the performance of said contract with Talbot; that is, to secure the payment of the semi-annual installments due upon the principal sum, also interest and taxes. At the same time A. G. Bender mortgaged said chattels to Hill, together with some other personal property, to secure the payment of approximately $3,100. About August 6, 1929, Bender notified Talbot that on account of having to take back his farm, which he had sold, he was unable to go ahead with the contract, and had entered into a tentative agreement for the sale of his interest in the contract for the purchase of the farm and the personal property to one Ray S. Bainter. It was necessary to obtain the consent of Talbot to consummate this sale and negotiations therefor were pending for some time. One or two conferences were held in the office of attorney S. M. Endicott. Talbot agreed that said transfer might be made provided the interest due was paid and a cash payment of $500 was made upon the purchase price of the property. Before the sale was concluded a controversy arose between Talbot and Bender with respect to a team of horses covered by Talbot's chattel mortgage which Bender, without Talbot's consent, had taken from the premises and left in lieu thereof another team of horses of less value. Talbot requested Bender to return the team of horses which he had taken and

declared he would not proceed with the Bainter deal unless the horses were returned. Talbot was also asked to take Bainter's note for $500 in lieu of a cash payment, which was not satisfactory to Talbot.

Mr. Endicott testified pointedly that the arrangement in regard to releasing Bender upon the contract and chattel mortgage was all conditional upon the transfer of the property to Bainter and the execution of a new contract of sale and chattel mortgage and the payment of the amounts mentioned, and that the three-cornered contract with Bainter was never completed. Mr. Endicott is not attorney for the administratrix, and has no interest in the matter. We think he understood the situation a great deal better than Mr. Bender did. In substance, Mr. Bender has confused the negotiations in regard to the transfer to Bainter with a consummated agreement.

About August 15, Bender abandoned the farm. There was some proposition that Talbot retain 40 tons of hay which Bender had left on the farm, about which there is a controversy and considerable doubt. On September 1, 1929, Talbot, because of Bender's default in the payments due on the contract, proceeded to foreclose the chattel mortgage by placing the same with the sheriff of Marion county, with instructions to take possession of the personal property and sell the same.

Margaret Foster was duly appointed administratrix of the estate of J. S. Talbot. On December 5, 1929, plaintiffs instituted suit in Marion county for the foreclosure of their chattel mortgage, making Margaret Foster, as administratrix of the estate of J. S. Talbot, deceased, a party defendant.

■ The main question in this case is whether the contract of sale from Talbot to Bender and the chattel mortgage from Bender to Talbot were satisfied and discharged at the time of the negotiations for the sale of the place to Bainter.

S. M. Endicott, an attorney of this court in good standing, acted for Talbot and was to prepare the papers for the proposed transfer. Bender appears to have understood the negotiations for the deal with Bainter to have been a completed contract in so far as he was concerned. Those negotiations did not ripen into a contract and were not carried out. The proposed deal between Bender and Bainter, to be approved by Talbot, was never consummated. The conditions imposed by Talbot for the deal, the payment of $500 and interest, were not complied with. Bender testified that he had the money there to pay the interest.

At the time the answer and cross-complaint of Margaret Foster, as administratrix, was filed, on February 6, 1930, there was due on the contract of sale from Bender to Talbot $113.75 interest on the Federal Land Bank mortgage; the last half of the taxes of 1928, $63.60, due November 5, 1929; an installment due February 1, 1930, $500; interest on $11,000 from May 20, 1929, to February 1, 1930, $381.91, making a total amount of $1,059.26 due from Bender to Talbot on the contract for which the chattel mortgage and note of $2,000 were given to secure.

Bender was a witness upon the trial. He stated that the Bainter deal did not go through. He also stated that he was willing at that time to pay the interest due on the contract of sale and had some money there for that purpose. Mr. Bender did not question the amount due upon the contract of sale and chattel mort-

gage to Talbot, except by claiming that it had been settled by the payment in hay. Neither is there any other payment pleaded on the part of plaintiffs or Bender. ·

■■ As the circuit court found that the mortgage from Bender to Talbot had been satisfied, it did not pass upon the priority of the two mortgages.

In view of the fact that the allegations of defendant Margaret Foster's cross-complaint and the record of the Talbot mortgage vary as to dates of recordation, we will consider this question from two standpoints.

S. M. Endicott, who was the scrivener acting for both parties at the time the contract and mortgage were executed, testified in effect that it was understood and agreed between the parties that the mortgage from Bender to Talbot should be prior and superior to the mortgage from Bender to Hill. This is in conformity to the circumstances existing prior to the time of the execution of the Bender mortgage. Talbot had a mortgage upon the personal property from Given. Hill also executed a mortgage in favor of Talbot when the transfer was made from Given to Hill. Soon after the execution of the mortgage from Bender to Talbot and the execution of the mortgage from Bender to Hill, Talbot, who is now deceased, came to Mr. Endicott's office and stated he understood that Hill's mortgage was recorded prior to his. Mr. Endicott informed him that it was not, and Mr. Endicott testified that soon afterwards he saw Mr. Hill and mentioned the matter to him, and Mr. Hill said that he did not claim his mortgage was prior.

As we understand the record, the attorney for plaintiffs, when the matter of priority of the mortgage was mentioned and discussed between the attorneys

at the time of taking testimony, said that "we will waive that anyway." We think the record fairly shows that it was understood and agreed between the parties to the two chattel mortgages in question that the mortgage to Talbot, who is now deceased, was to be prior and superior to that of Hill's.

Where it is agreed between the parties to two contemporaneous mortgages that one should be a prior lien and should be first filed for record, that mortgage is entitled to priority, although by mistake or inadvertence the other mortgage is filed first. Jones on Chattel Mortgages (5th Ed.), p. 377, § 246; see also 11 C. J. 650, § 393.

In section 392 of the latter volume, it is stated:

"Priority of record usually determines priority of lien between recorded mortgages, irrespective of the order of execution, in the absence of knowledge or notice of the first mortgage, or an agreement postponing the mortgage first filed; *    *    *"

We hold that the mortgage from Bender and wife to J. S. Talbot was prior and superior to the lien of the chattel mortgage from Bender and wife to plaintiffs, except as to the property that was added in the mortgage to Hill and was not included in Talbot's mortgage.

We do not think that it was agreed between Bender and Talbot that Talbot should keep the 40 tons of hay of the value of $400 for the difference in value of the team of horses which Bender had taken and the team which he left on the farm, but rather that it all depended on the deal with Bainter being completed. The court cannot make a contract for the parties. Bender, by his answer, in effect claimed credit for the 40 tons of hay, and, in order for a court of equity to settle the whole matter, the value of the hay, $400, should be credited to Bender on the contract.

We find no merit in the cross-appeal of the plaintiffs J. D. Hill and Mattie W. Hill.

The decree of the circuit court is reversed and one will be entered in favor of Margaret Foster, as administratrix of the estate of J. S. Talbot, deceased, foreclosing the chattel mortgage of A. G. Bender and wife to J. S. Talbot, as a first mortgage, superior in right to plaintiffs' chattel mortgage. It is further decreed that the personal property described in said chattel mortgage, together with the increase thereof, be sold to satisfy: First, the costs of such sale and the costs and disbursements of Margaret Foster, administratrix of the estate of J. S. Talbot, deceased; second, the balance of $659.26, after crediting $400, the value of the hay, due on the contract and chattel mortgage, together with interest thereon at the rate of five per centum per annum from February 1, 1930, until paid, together with the further sum of $100 as reasonable attorneys' fees for foreclosing said chattel mortgage. If any balance of the proceeds of such sale then remains, that the same be applied to the satisfaction of plaintiffs' chattel mortgage; further decreeing that plaintiffs' chattel mortgage is subject to the mortgage of defendant Margaret Foster, as administratrix, and that the chattel mortgage of plaintiffs upon said personal property, not described in the chattel mortgage executed in favor of Talbot, to wit: "three other cows of the same kind and quality above mentioned, making in all the number of eighteen cows, also one two-year-old bull" be sold to satisfy plaintiffs' mortgage, $2,843.20, together with interest thereon from May 1, 1929, at eight per centum per annum until paid, the amount prayed for in plaintiffs' complaint; that each party to this proceeding pay and bear their own costs.

RAND, ROSSMAN and KELLY, JJ., concur.